813 So.2d 1184 (2002)
In the MATTER ENTITLED STATE of Louisiana
v.
Elizabeth SPILLERS.
In re Gannett Company, Inc. d/b/a The Advertiser.
No. 01-1098.
Court of Appeal of Louisiana, Third Circuit.
April 3, 2002.
*1185 Edward C. Abell, Jr., Brent G. Sonnier, Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, LA, for Gannett Company, Inc. d/b/a The Advertiser.
Chester R. Cedars, Attorney at Law, Breaux Bridge, LA, for State of Louisiana.
George W. McHugh, Attorney at Law, St. Martinville, LA, for Elizabeth Spillers.
SULLIVAN, Judge.
This matter is before us pursuant to writ applications filed by Gannett Company, Inc. d/b/a/ The Advertiser (Gannett) with this court and the supreme court wherein it alleged that the trial court imposed on it "an unconstitutional prior restraint of freedom of speech, expression, and the press," in violation of the First Amendment to the Constitution and Article I, Section 7 of the Louisiana Constitution. Finding the record insufficient to sustain the imposition of prior restraint on Gannett's first amendment right of free speech, we reverse.

Facts
On August 13, 2001, Elizabeth Spillers was arrested and booked into the Lafayette Correctional Center pursuant to a warrant issued by the Sixteenth Judicial District Court, Parish of St. Martin for failure to appear in court for a criminal matter. At the time of booking, Ms. Spillers provided her current address. On August 14, 2001, without notice to Gannett, the trial court signed an order which prohibited publication of Ms. Spillers' name and address in any newspaper or public writing in Lafayette and St. Martin Parish. On August 15, 2001, the trial court amended its August 14 order to prohibit publication of Ms. Spillers' address only. The amended order also stated: "The non-disclosure of the defendant's address is because there is a protective order in effect in Lafayette Parish, entitled "Elizabeth Spillers versus Silvino Gomez, Docket Number XXXX-XXXX, Parish of Lafayette, State of Louisiana."
Gannett lawfully obtained Ms. Spillers' name and address and sought to publish it in The Advertiser in a list of persons charged with crimes. Due to the trial court's order, Gannett filed a motion for reconsideration or amendment of order with the trial court. Without a hearing, the trial court denied the motion. In written reasons, the trial court explained, "[t]he state's interest in issuing the order was protection of the defendant from any immediate and irreparable harm that may have been occasioned by the publication of the address.... The main objective or governmental interest sought to be accomplished was protecting an individual from foreseeable harm."
Gannett filed supervisory writs directly with the supreme court and on August 23, 2001, its writ application was granted for the sole purpose of transferring the matter to this court for expedited consideration. On September 12, 2001, this court denied Gannett's writ. See In the Matter Entitled State of Louisiana v. Elizabeth Spillers In Re: Gannett Company, Inc. d/b/a The Advertiser, an unpublished writ bearing docket number W01-1098 (La.App. 3 Cir. 5/12/01). Thereafter, Gannett filed a supervisory writ application with the supreme court which was granted. The supreme court remanded the matter to this court for briefing, argument, and opinion. See In the Matter Entitled State of Louisiana v. Elizabeth Spillers In Re: Gannett Company, Inc. d/b/a The Advertiser, an unpublished writ bearing docket number 01-2556 (La.9/19/01).

*1186 Discussion

The First Amendment to the Constitution provides in part: "Congress shall make no law ... abridging the freedom of speech, or of the press ..." This prohibition also applies to each state. See Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); Mashburn v. Collin, 355 So.2d 879 (1977). Article I, § 7, of the Louisiana Constitution also protects the right of free speech, stating: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."
Prior restraint has been defined as "that restraint or suppression of an expression without judicial determination of the right to suppress [b]efore any publication, any exhibition, any communication of that expression." Gulf States Theatres of Louisiana, Inc. v. Richardson, 287 So.2d 480, 490 (La.1973). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976).
The protection against prior restraint is not "absolutely unlimited but the limitation has been recognized only in exceptional cases." Guste v. Connick, 515 So.2d 436, 438 (La.1987), citing Near v. Minnesota ex rel Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Prior restraint on freedom of speech has a "`heavy presumption' against its constitutional validity." Id., quoting Organization For a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1. Before prior restraint can be deemed constitutional, a court must determine whether "the gravity of the `evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." United States v. Dennis, 183 F.2d 201, 212 (2d Cir.1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), quoted in Nebraska Press, 427 U.S. at 562, 96 S.Ct. at 2805.
In its reasons for denying the motion for reconsideration, the trial court referenced a protective order in favor of Ms. Spillers, explaining that it prohibited disclosure of Ms. Spillers' address "to prevent [her] from any type of foreseeable harm or violence." The trial court also outlined its considerations of the protection afforded free speech by the Constitution when restraint of that right is "to serve a compelling state interest."
We must consider the evidence before the trial court when it entered the order at issue, not just its reasons for entering the order. Nebraska Press, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683. However, there is no evidence of a protective order in the record. Without the protective order, we do not have the information necessary to determine whether the trial court's order was a proper prior restraint of Gannett's right of free speech. For example, we do not know if a protective order or a temporary restraining order was issued; the type or severity of Ms. Spillers' allegations against the named defendant; when the order was issued or how long it was to remain in effect; whether it was contested or was issued by consent of the parties; where the named defendant lived at the time; whether Ms. Spillers had knowledge of his whereabouts; whether he had disobeyed the protective order; or why Ms. Spillers believed publication of her address in the newspaper would place her in harm's way. Without evidence of this nature, we cannot ascertain the likelihood of harm to Ms. Spillers in the event her address is published in the *1187 newspaper. Apparently, the trial court equated the existence of a protective order with a real and legitimate likelihood that the named defendant would see Ms. Spillers' name and address in the newspaper, then seek her out and harm her in violation of the protective order. We do not.
We recognize the trial court's concern for the safety of Ms. Spillers. However, the record simply does not establish that publication of her address in a newspaper would place her in such danger that prior restraint of Gannett's right to speech was warranted. The order of the trial court is reversed.
REVERSED.